1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8    TONY EUGENE SAFFOLD,

9            Petitioner,                    No. CIV S-98-1040 DFL JFM P

10       vs.

11   JIM HAMLETT, Warden, et al.,

12           Respondent.                    FINDINGS AND RECOMMENDATIONS

13   _____/

14           Petitioner is a state prisoner proceeding with counsel with an application for a writ

15   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his April 3, 1990,

16   conviction on charges of first-degree murder, CAL. PENAL CODE § 187, assault with a deadly

17   weapon, CAL. PENAL CODE § 245(a)(2), two counts of robbery, CAL. PENAL CODE § 211, and

18   findings of firearms use associated with the murder and robberies, CAL. PENAL CODE § 12022.5.

19   As a result of his conviction on all counts, the trial court sentenced petitioner on July 2, 1990, to

20   three years on one of the robberies, with a concurrent middle term of three years for assault with

21   a deadly weapon, and a consecutive indeterminate term of 25 years to life for the first-degree

22   murder.  The court set the sentence for the other robbery at the middle term of three years and

23   stayed the sentence, along with the firearms enhancement on the two robberies.  The court also

24   imposed a two year enhancement associated with the murder.[1]

25   _____

26       [1] Upon direct appeal, the California Court of Appeal for the Third Appellate District
     modified the sentence by staying the sentence for assault with a deadly weapon.

                                        1

Petitioner raises two claims in his petition, filed June 4, 1998, that his prison sentence violates the Constitution.[2]  In both claims, petitioner alleges ineffective assistance of trial counsel.[3]  In the first claim, petitioner argues that his trial counsel failed to properly impeach with two sets of out of court statements the credibility of the eyewitness to the murder.  In the second claim, petitioner states that his counsel failed to properly litigate a motion to suppress the eyewitness's identification of petitioner.

Respondent filed his answer on October 27, 2004.[4]

/////

---

[2]  Petitioner's original petition filed on June 4, 1998, contained five claims.  After significant litigation on the issue of procedural default, petitioner filed a supplemental memorandum of points and authorities on August 9, 2004.  In that supplemental memorandum, petitioner abandoned claims three through five.

[3]  Petitioner was represented by multiple defense counsel.  Patricia Ferguson represented petitioner during the preliminary hearing.  At trial, Ralph Cingcon and Michael Platt were petitioner's trial counsel.  While Mr. Platt filed the motion to exclude Ms. Michel's identification that is at issue in petitioner's second claim, Mr. Cingcon argued the motion and did most of the oral advocacy in this case, including cross-examination of the witnesses during trial.  In order to avoid confusion, the court has chosen to address all counsel in the singular.  Where necessary, reference to particular counsel has been made.

[4]  Following their answer, respondent filed a renewed motion to dismiss on April 13, 2006.  Petitioner replied on August 17, 2006, with surreply following on September 9, 2006.  Respondent argues in their renewed motion that petitioner's writ was not properly filed because he delayed nearly five years before filing his state petition.  While respondent's position appears to have some merit in light of the decision in Pace v. DiGuglielmo, 544 U.S. 408 (2005) and the subsequent Ninth Circuit ruling in Bonner v. Carey, 425 F.3d 1145 (9th Cir. 2005), the court makes no findings and recommendations with regards to that procedural issue.
Although the question of procedural default and other general prerequisites for federal habeas corpus which are unrelated to the merits of the particular claims "should ordinarily be considered first," a reviewing court need not do so "invariably," especially when those issues turn on difficult questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (court bypassed question of procedural default to reach the merits of petitioner's claims); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (same); Carr v. Cigna Securities, Inc., 95 F.3d 544, 547 (7th Cir. 1996) (court choosing to bypass statute of limitations issues to reach the merits of the claims before it).  In order to resolve whether the instant petition is time-barred, the court would be required to address complicated and novel issues with regard to the applicability of Pace to California's timeliness rules.  In this case, the court finds that petitioner's claims can be resolved more easily by addressing them on the merits.  Accordingly, without deciding the issue, the court will assume for the sake of these findings and recommendations that petitioner's claims are not time-barred.

FACTS[5]

Shortly after 7:00 a.m., on September 29, 1986, Saffold and Rodney Reece drove to the El Mexicano Restaurant. The owners, Augustin and Maria Michel, had arrived at 6:30 a.m. and opened at 7:00 a.m.

Saffold entered the restaurant, retrieved a beer from a cooler, then approached the cash register. When Saffold arrived at the cash register, Mr. Michel was already there. Saffold aimed a gun at Mr. Michel and said, in English, "Give me the money, give me the money." Mr. Michel raised his arms and said, in Spanish, "Which money? What money?" Saffold fired the gun, hitting Mr. Michel on the right side of the neck. He fired a second shot which was later recovered in the kitchen.

Mrs. Michel, who from the kitchen area saw the two at the cash register and saw Saffold shoot Mr. Michel, moved back to the sink in the kitchen. Mr. Michel entered the kitchen and "threw himself on the floor." He said to Mrs. Michel, "Get down, they're going to kill you." She squatted down, but Saffold said to her, "Give me the money, give me the money." At gunpoint, she went to the cash register and put it in a bag. Saffold took the food stamps from the register and put them in the bag. He then ran out of the restaurant. Mr. Michel died from the gunshot wound.

Saffold testified in his own defense claiming he went to the El Mexicano Restaurant on the morning of September 29, 1986, and bought a beer and two burritos, but did not commit the crimes.

(People v. Saffold, slip op. at 2-3).

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

---

[5] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Saffold, No.# C009223 (January 27, 1992) (hereinafter Opinion), a copy of which is attached as Exhibit D to Respondent's Answer to Petitioner's Application for Writ of Habeas Corpus, filed August 9, 2004.

1      (2) resulted in a decision that was based on an unreasonable
2  determination of the facts in light of the evidence presented in the
   State court proceeding.

3  28 U.S.C. § 2254(d).

4          Under section 2254(d)(1), a state court decision is "contrary to" clearly

5  established United States Supreme Court precedents if it applies a rule that contradicts the

6  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

7  indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

8  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

9  (2000)).

10          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

11  habeas court may grant the writ if the state court identifies the correct governing legal principle

12  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

13  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

14  simply because that court concludes in its independent judgment that the relevant state-court

15  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

16  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

17  123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

18  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

19          The court looks to the last reasoned state court decision as the basis for the state

20  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

21  II.  Petitioner's Claims

22     A.  Claim of Ineffective Impeachment of Eyewitness Testimony with Prior Inconsistent
      Statements.
23

24          Petitioner's first claim is that his trial counsel provided ineffective assistance.

25  Petitioner claims his trial counsel committed prejudicial error when he failed to effectively cross-

26  examine Ms. Michel, the key prosecution witness.  According to petitioner, trial counsel's failure

1  to impeach Ms. Michel with her prior inconsistent statements about the identity of the murderer

2  cast significant doubt upon the jury's verdict and require granting of the writ.

3          There was no reasoned rejection of this ineffective assistance claim by the state

4  courts.  Rather, upon presentment of this particular claim by petitioner, the California Supreme

5  Court issued a "post-card" denial, stating simply that the "petition for writ of habeas corpus is

6  denied." (Resp't's Answer to Writ of Habeas Corpus, filed October 27, 2004, Appendix F

7  [hereinafter "Answer"].)  Such a terse "post-card" denial is an adjudication on the merits.  Gaston

8  v. Palmer, 417 F.3d 1030, 1038 (9th Cir. 2005); Luna v. Cambra, 306 F.3d 954, 960 (9th Cir.

9  2002), mandate recalled and reissued as amended by 311 F.3d 928 (9th Cir. 2002); Hunter v.

10 Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992), cert. denied, 510 U.S. 887 (1993).  There is

11 nothing in the record that indicates that the denial was procedural or not on the merits of

12 petitioner's claim.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This court is obligated to

13 apply AEDPA standards as a result of the fact that there has been an adjudication on the merits,

14 28 U.S.C. § 2254(d); however, given the lack of reasoning provided in the previous denials, it

15 must conduct an "independent review of the record . . . to determine whether the state court

16 clearly erred in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982

17 (9th Cir. 2000).  Upon review of the record, it is clear that the state court denial of petitioner's

18 claim was objectively reasonable.  See Williams, 529 U.S. at 409.

19         The test for demonstrating ineffective assistance of counsel is set forth in

20 Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

21 all the circumstances, counsel's performance fell below an objective standard of reasonableness.

22 Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or omissions that

23 are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The

24 federal court must then determine whether in light of all the circumstances, the identified acts or

25 omissions were outside the wide range of professional competent assistance.  Id.  "We strongly

26 presume that counsel's conduct was within the wide range of reasonable assistance, and that he

5

1   exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg,

2   898 F.2d 695, 702 (9th Cir. 1990)(citing Strickland, 466 U.S. at 689).

3          Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at

4   693. Prejudice is found where "there is a reasonable probability that, but for counsel's

5   unprofessional errors, the result of the proceeding would have been different." Id. at 694. A

6   reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

7   In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a

8   fundamental fairness standard. Williams v. Taylor, 529 U.S. 362 (2000), (citing Lockhart v.

9   Fretwell, 506 U.S. 364 (1993)).

10          On October 3, 1986, police investigators interviewed Ms. Michel. At that time,

11   they showed her a photo lineup from which she identified petitioner with "99 percent" certainty.

12   (RT 5486.) On March 13, 1987, prior to the preliminary hearing in this case, investigators

13   returned to Ms. Michel and showed her two additional photographic lineups. In the first lineup

14   array of six photographs shown at that time, Ms. Michel once again identified petitioner. (RT

15   6178-6179.) While viewing a second set of photographs, Ms. Michel identified a photograph of

16   Steven Claude Rockingham or Thomas Rideau[6] and told the police investigator, Sgt. Steven

17   Knief, that "there was a resemblance" in the person in this photograph. (RT 5869, 6179.) She

18   also stated that, "she thought [this person] had a slight resemblance to [petitioner] but it was not

19   him." (Id.) During this examination of the second set of photographs, investigators removed a

20   photograph of Mr. Reece and asked Ms. Michel if she recognized him. (RT 4964, 5869.) Ms.

21   Michel replied with certainty that she did not. (RT 5869.)

22   /////

23

24        [6] Petitioner states in his petition that the person identified by Ms. Michel during this
second lineup was Mr. Steven Claude Rickingham or Rockingham. (Pet'r's Mem. of Points and

25   Authorities 20, filed June 4, 1998 [hereinafter "Pet'r's Mem."].) This statement is consistent
with the testimony of Sgt. Knief, who identified the photograph during the preliminary hearing.

26   However, the testimony at trial identified the man as Thomas Rideau.

1    Petitioner makes two allegations of ineffectiveness stemming from his trial

2    counsel's failure to cross examine Ms. Michel with her prior statement in order to attempt to

3    impeach her testimony.[7]  (Pet'r's Supplemental Mem. at 27 [hereinafter "Pet'r's Supp."].)  In the

4    first instance, petitioner argues that his trial counsel erred when he failed to cross-examine Ms.

5    Michel with statements she made during the lineup conducted on March 12, 1987.  The second

6    charge of ineffectiveness results from petitioner's trial counsel's failure to cross-examine Ms.

7    Michel with statements made by her at the preliminary hearing about the March 12, 1987 lineup.

8    In both instances, petitioner has failed to demonstrate that the level of his representation fell

9    below a reasonably competent standard.  Denial of petitioner's first claim is recommended as his

10   counsel's actions were neither contrary to, nor an unreasonable application of clearly established

11   Federal law.

12           1.  <u>Failure to Impeach with Statements Made to Sgt. Knief</u>

13   According to petitioner, his trial counsel erred when he failed to impeach Ms.

14   Michel with a statement that she made to investigators on March 13, 1997.  (Pet'r's Mem. at 19.)

15   Petitioner asserts that Ms. Michel identified someone else during this lineup as the person who

16   murdered her husband.  Petitioner argues that failure to effectively cross-examine on this issue

17   resulted in prejudice to him.  Petitioner's claim is without merit.

18           Petitioner makes no credible showing that his counsel's failure to impeach Ms.

19   Michel with any statement made during the March 13, 1987 lineup was objectively

20   unreasonable.[8]  Indeed, the facts indicate that there is no apparent basis for any impeachment

21

22           [7] Prior inconsistent statements are admissible as impeachment evidence under CAL.
     EVID. CODE § 780(h) and, when the witness has an opportunity to explain or deny the
23   inconsistency, as substantive evidence under § 1235.  As noted by the trial judge in his
     instructions, prior inconsistent statements may be considered by the jury in assessing the
24   believability of a witness, (RT 7181), and as evidence of the truth of the facts stated previously
     (RT 7180-7181).

25           [8] Petitioner cites to the Reporter's Transcript to support his claims.  These citations are in
26   error and should be made to the Clerk's Transcript.  For instance, petitioner claims that Sgt.
     Knief showed Ms. Michel a photo lineup on March 13, 1997, citing to page 147 in the Reporter's

based upon Ms. Michel's statements during the interview.  At no point during either lineup

shown to her on that day did Ms. Michel identify anyone other than petitioner as the man she

witnessed murder her husband.  As testified to by Sgt. Knief, upon being shown the initial lineup

containing petitioner's photograph Ms. Michel immediately pointed to petitioner and identified

him as the murderer.  (RT 145, 6178-6179.)  This fact was elicited during both direct

examination by the prosecutor and cross-examination by trial counsel.  When shown the second

photo array, petitioner pointed to someone, but qualified her identification by saying that while

that man resembled petitioner, it is "not him."  (RT 147, 6179.)

Trial counsel had many reasons for not attempting to impeach Ms. Michel with

these statements.  The most important is that there is nothing contradictory about Ms. Michel's

prior statements to suggest any problems with her recollection of events.  Ms. Michel recognized

petitioner from the first lineup.  She did not identify him in the second lineup.  Counsel cannot be

criticized for refusing to raise a meritless issue wholly unsupported by the facts.  See United

States v. Shah, 878 F.2d 1156, 1162 (9th Cir. 1989)(failing to raise a meritless legal argument is

not ineffective assistance of counsel), cert. denied, 493 U.S. 869 (1989).

Notwithstanding the obvious lack of any inconsistency in Ms. Michel's statements

to investigators on March 13, 1987, trial counsel's decision to avoid asking questions about this

later lineup was also a valid strategic decision.  Ms. Michel's answers to Sgt. Knief only

reconfirm that she was confident about her identification of petitioner as she would not waiver

from that opinion at a later time.  The comments made by Ms. Michel during the interview show

that she was able to draw subtle distinctions between the individuals shown in the second set of

photos and petitioner.  Cross-examination on this matter would also permit the prosecution to

place a greater emphasis on Ms. Michel's prior consistent statements, such as those given to

police immediately after the murder describing a man resembling petitioner, (RT 5482-5483), as

---

Transcript.  (Pet'r's Supp. at 27.)   However, page 147 details only scheduling matters.

well as identifications made at the October 3, 1986 lineup, (CT 11, 18-19, 145, RT 5484-5487). See CAL. EVID. CODE § 1236.   This strategic decision to avoid the prior statement is further justified if, in defense counsel's opinion, the individual shown from the second array does in fact resemble petitioner.[9]   Petitioner's trial counsel stated as much in his closing argument, noting that the individual identified in the second lineup had a "slight resemblance."  (RT 6971.)

### 2. Failure to Impeach with Statement Made at Preliminary Hearing.

Ms. Michel made additional statements about the March 13, 1987 lineup during the preliminary hearing.  Petitioner argues that trial counsel erred when he failed to cross-examine Ms. Michel about these statements at trial.  (Pet'r's Supp. at 27-28.)  According to petitioner, cross-examination of Ms. Michel about these statements would have rendered her identification fundamentally unreliable.  The facts do not support petitioner's claim.

As with his claim above, petitioner misrepresents what actually occurred at the preliminary hearing in order to serve his conclusions.  With one exception, Ms. Michel's preliminary hearing testimony appears to be consistent with what actually occurred on March 13, 1987.  Where an inconsistency is present, trial counsel's failure to cross-examine on that single issue did not result in error.

At the preliminary hearing, trial counsel asked Ms. Michel about the two sets of photographs that she examined on March 13, 1987.  As a result of those questions, the following exchange took place:

> Ms. Ferguson:  . . . . Now, showing you Defendant's B [the second set of photos], I would like to ask that you show me in this lineup the person that you told Officer Wagner was the person that had shot your husband.  Can you point to the picture you picked out the second time?
>
> The Court:  Picture on the left side.
>
> Ms. Ferguson:  Left side, the second.

---

[9]  The record contains neither Mr. Saffold's nor Mr. Rockingham's photographs.

1      The Court:  It's the middle photograph on the left side.  Second
2      down from the top.

3  (Clerk's Transcript on Appeal (hereinafter "CT" 58.)  The trial court stated that "it was pretty

4  clear to me, the witness indicated she was identifying the perpetrator."  (CT 69.)  However, the

5  statements in their proper context do not support such a finding by the court, nor do they lead to

6  the conclusion that petitioner's counsel erred by failing to raise the exchange during the trial.

7          There is legitimate confusion over what question Ms. Michel actually answered.

8  As the transcript shows, Ms. Michel answered in the affirmative that she could pick out the

9  person she identified.  Trial counsel prefaced this question with a statement about the identity of

10 the murderer, but did not ask Ms. Michel if the person she chose was actually the man who shot

11 her husband.  Given the fact that multiple interpretations exist about the true nature of the

12 question and answer in this exchange, and that the actual answer given to the actual question

13 asked does not support petitioner's conclusion of an inconsistency, trial counsel's failure to

14 cross-examine Ms. Michel about her statement was not below an objective standard of

15 reasonableness.

16         During a second series of questions at the preliminary hearing, petitioner claims

17 that Ms. Michel contradicted herself by answering that her identification of the man in the second

18 array was an error and that she wasn't able to pick anyone from the second lineup.  (Pet'r's Supp.

19 at 27.)  This contradiction requires a belief that Ms. Michel affirmatively identified a man from

20 the second array as the one who killed her husband.  As shown above, this interpretation does not

21 naturally flow from the questions asked.  Furthermore, given the testimony of others present at

22 the time Ms. Michel made her statements on March 13, 1987, it is apparent that she identified

23 someone, but qualified her identification by definitively saying that the man in the photo was

24 "not him."  (RT 147, 6179.)

25         Petitioner also complains about the following exchange:

26 /////

1    Q:  Now, in response to Ms. Ferguson's questions, you've
     described what you did when you saw the photo lineups.  Do you
2    recall that?

3    A:  The first one yes.  The second one I'm not sure.

4    Q:  . . . I have pulled out the top right hand photo [from the first set
     of photos] which is identified in the back as Tony Eugene Saffold.
5    ¶Now, you were also shown a second photographic lineup which
     has been identified here as Defendant's B.  Are you saying that this
6    defendant's photograph is someplace in these?

7    A:  I'm not sure about these.

8    (CT 65.)  Petitioner argues that this exchange demonstrates additional inconsistencies in Ms.

9    Michel's identification that could have been used by his trial counsel to undermine her

10   credibility.  To reach this conclusion, one must conclude that Ms. Michel identified someone in

11   the second set of photos as the man who shot her husband.  As the transcript indicates, Ms.

12   Michel stated that she was unsure whether petitioner was in the second set of photos.

13          Ms. Michel expressed no doubt about her identification of petitioner, but rather,

14   indicated that she was unable to remember the specifics of the questions that had been put forth

15   to her by petitioner's trial counsel or whether petitioner was in the second photo array.  There is

16   no indication of any apparent inconsistency upon which Ms. Michel might be cross-examined at

17   trial.  The failure to utilize this passage from the preliminary hearing in an attempt to impeach

18   Ms. Michel was objectively reasonable.

19          In the instances cited above, even assuming the facts are as petitioner posits them,

20   there is no contradiction sufficient to warrant effective impeachment given that Ms. Michel did

21   not ever tell Sgt. Knief that the man from the second photo array was the man who shot her

22   husband, nor did she ever state that petitioner's photograph was in the second array.  The

23   testimony showed that Ms. Michel clearly identified petitioner in the first lineup shown to her on

24   March 13, 1987 (RT 6178), and that her reference to Mr. Rockingham or Mr. Rideau was simply

25   because he bore some resemblance to petitioner, but that it was not him (RT 6179).  Petitioner's

26   claim that Ms. Michel's contradicted herself when she affirmatively answered that she viewed

                                              11

1   both a single photograph and multiple photographs is also without merit given the fact that both

2   of these events occurred during the March 13, 1987 interview.

3            Petitioner cites numerous cases for the proposition that the failure to impeach a

4   witness's trial testimony with prior inconsistent statements is ineffective.  See (Pet'r's Supp. at

5   24-27.)  However, each of those cases involved an omission of dramatically inconsistent prior

6   statements.[10]  See United States v. Tucker, 716 F.2d 576, 586 (9th Cir. 1983)(involving earlier

7   perjured inconsistent testimony); Driscoll v. Delo, 71 F.3d 701 (8th Cir. 1995)(involving a

8   witness who testified at trial that he had witnessed defendant stab prison guard, but who had

9   previously told investigators that he merely had heard defendant "or someone" stabbed prison

10  guard); Smith v. Wainwright, 799 F.2d 1442, 1443-1444 (11th Cir. 1986)(involving witness who

11  testified at trial that defendant was a principal actor in a murder, but who had earlier told

12  investigators that he had been the principal actor).  Unlike the cited cases, Ms. Michel's

13  testimony raises few doubts about the truth of her trial testimony.  Indeed, much of the prior

14  testimony, such as Ms. Michel's insistence that the man in the second photo array looks like

15  petitioner, but was not him, merely bolsters her credibility by reinforcing before the jury Ms.

16  Michel's confidence in her identification of the murderer.  The lack of inconsistencies and the

17  /////

18

19  _____

        [10]  Petitioner also cites to two additional cases that are not relevant to this claim.  In
20  Steinkuhler v. Meschner, 176 F.3d 441 (8th Cir. 1999), the court found ineffective assistance of
    counsel as a result of trial counsel's failure to cross-examine a witness about statements that he
21  made prior to trial.  There was no evidence of any prior inconsistent statements.  During the trial,
    the unimpeached witness told his subordinate, who offered contradictory testimony, that he
22  routinely "forgot" evidence that was unfavorable to the prosecutor's case.  This unimpeached
    witness was the only witness to offer evidence rebutting the petitioner's defense of intoxication
23  and his testimony was in direct conflict with other testimony in the record.  As the District Court
    noted, this prior statement about convenient forgetfulness was enough for a "devastating" cross-
24  examination and should have been utilized by the trial counsel to destroy the unimpeached
    witness's credibility.
25      In Tomlin v. Myers, 30 F.3d 1235 (9th Cir. 1994), the court found ineffective assistance
    where defense counsel failed to challenge a lineup conducted outside counsel's presence.  Given
26  petitioner's arguments, the court assumed this citation was meant to made in his second claim.
    and was erroneously cited as legal authority in the first claim.  The court considered this case in
    its analysis of petitioner's second claim.

weakness of any uncertainty in the preliminary hearing testimony suggests trial counsel acted

reasonably in the cross-examination of Ms. Michel.

In one instance, petitioner's recitation of the facts is accurate and his claim is not

so easily dismissed.  During an exchange with trial counsel, Ms. Michel gave the following

testimony in which she appeared to identify someone else as the person who murdered her

husband.

> Q:  Do you recall Sergeant Knief and myself coming out to see you
> at your house?
>
> A:  Yes.
>
> Q:  Okay.  And we – do you recall us showing you specifically a
> photograph of a different man?
>
> A:  Yes.
>
> Q:  One photograph in particular, do you remember that?
>
> A:  Yes.
>
> Q:  And at that time, do you recall what we asked you about that
> person?
>
> A:  If it was the person.
>
> Q:  And was that the man or was that not the man?
>
> A:  Yes, it was.
>
> Q:  The single photograph, that Sergeant Knief and I showed you,
> remember we came to your house and showed a single
> photograph?
>
> A:  I don't remember.

(CT 65-66.)  There is little doubt that Ms. Michel said that the person she identified in the second

array was the perpetrator.  This person was not petitioner, but rather, Mr. Reece, whose picture

was removed from the second photographic array and individually shown to Ms. Michel.  (RT

4964, 5006, 5869.)

/////

However, finding that counsel's failure to cross-examine Ms. Michel on this one answer was below a standard of reasonable competence is not possible given the inconclusive nature of Ms. Michel's testimony when examined in its entirety.  Ms. Michel's answer is one response to multiple questions by the prosecutor and defense counsel.  In every other instance, Ms. Michel positively identified petitioner in the first set of photos and excluded him from the second set.  Furthermore, the testimony was filtered through an interpreter.  Given that this exchange ultimately ended in frustration, with Ms. Michel responding that she did not remember an incident about which she had previously given detailed answers, it cannot be considered unreasonable for defense counsel to have concluded that cross-examination was not warranted.

From the time she was first asked, Ms. Michel consistently identified petitioner as the person who shot her husband.  Her identification at the March 13, 1987 lineup is confirmed by other witnesses who heard her comments.  In light of the true facts surrounding the lineup, the apparent inconsistency is easily explained away as a result of Ms. Michel's emotional state, the difficulties of direct and cross-examination, her limited understanding of English, and the need to use a translator.  Consequently, trial counsel's strategic decision to avoid cross-examination on this issue did not fall below an objective standard of reasonableness.

Furthermore, as it concerns each of the issues raised in this claim, defense counsel faced an obvious strategic choice with how aggressively they pursued cross-examination of Ms. Michel, a sympathetic widow and victim.  Trial counsel acknowledge this strategic conundrum when he stated in his opening that he did not want to be accused of "bad mouthing Ms. Michel." (RT 4823.)  During cross-examination, he apologetically reassured Ms. Michel that he did not wish to upset her and asked her to tell him if she needed a break or wished to compose herself. (RT 4951-4952, 4954.)  He reiterated his concern with handling Ms. Michel appropriately during cross-examination in his closing argument.  (RT 6975, 7002.)

To this end, petitioner's counsel effectively impeached Ms. Michel's credibility and her perception of events with other testimony.  On cross-examination, Officer Dale Wagner

1   testified to numerous statements made by Ms. Michel that were inconsistent with her trial

2   testimony, including the time she arrived at the restaurant on the morning of the murder (RT

3   5487), the ethnicity of the first customer into the store (RT 5489), and the movements of

4   petitioner in the store (id.).  Officer Wagner also described several inconsistencies in Ms.

5   Michel's multiple statements to investigators.  Officer Mark Lujan testified that despite Ms.

6   Michel's description of the clothes worn by petitioner during the murder, she was unable to

7   identify any of the items seized from petitioner.  (RT 5467.)

8            Trial counsel's approach to impeachment can often be viewed as a tactical

9   decision.  Reynoso v. Giurbino, 462 F.3d 1099, 1113 (9th Cir. 2006).  Such decisions are not

10  ineffective unless petitioner is able to "overcome the presumption that, under the circumstances,

11  the challenged action [or lack of action] 'might be considered sound trial strategy.'"  Strickland,

12  466 U.S. at 689 (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)).  Given the fact that

13  much of the evidence cited by petitioner may not even rise to the level of an inconsistent

14  statement that impeaches Ms. Michel's testimony, it is clear that this presumption regarding

15  strategy cannot be overcome.

16            Finally, even if the court were to assume trial counsel erred by failing to impeach

17  Ms. Michel with her preliminary hearing testimony or any of the other allegedly inconsistent

18  statements, petitioner can make no claim of prejudice.  The evidence of petitioner's guilt was

19  substantial.  Mr. Reece testified that petitioner admitted to robbing the restaurant (RT 4983), and

20  showed him a gun similar to that recovered from petitioner's home (RT 5013).  The gun had

21  three empty shell casings, noting that only one shell had been fired prior to the time petitioner

22  entered the restaurant.  (RT 4985-4986.)  Immediately after showing the empty shells, petitioner

23  told Mr. Reece that he had "just shot the guy in the face."  An expert witness testified that he felt

24  "very strongly" that the gun recovered from petitioner's home was "most likely" used in the

25  murder.  (RT 5673-5674.)  The prior inconsistent statements of Ms. Carolyn Williams provide

26  affirmative evidence that petitioner admitted to shooting Mr. Michel and robbing $45.00 from

1    the El Mexicano Restaurant.  (RT 5295-5299, 5899, 5900-5907.)  In petitioner's wallet when he

2    was arrested was $44.00.  (RT 5468.)

3            Petitioner's trial counsel argued during closing that the inconsistencies in Ms.

4    Michel's identification of petitioner made her less than credible (RT 6947, "Ms. Michel said

5    that's the man . . . But she could be mistaken," 7002-7005, 7055, 7083, "[I]f you have reasonable

6    doubt about [Ms. Michel's identification of petitioner], your duty is to give [petitioner] the

7    benefit of the doubt," 7091), and the factors that could lead to a misidentification of petitioner

8    (RT 6966-6977).  The verdict in this case makes it clear that the jury was not swayed by these

9    inconsistencies and found Ms. Michel's testimony credible.  There is no indication the result

10   would have been any different had trial counsel introduced any of the above statements.

11           Petitioner submitted affidavits from jurors supporting his argument that had they

12   been informed that Ms. Michel had identified someone else as the murderer prior to trial, the

13   outcome of the case might have been different.  (Pet'r's Mem. at App. A-1 through A-5.)  These

14   documents, although improper under Rule 606(b) of the Federal Rules of Evidence, are of no

15   relevance to this case since they assume circumstances which the court has found did not happen.

16           Petitioner claims ineffective assistance based upon his trial counsel's failure to

17   cross-examine a witness about non-existent inconsistencies in her testimony.  Petitioner attempts

18   to recast the history of the entire March 13, 1987 interview and the preliminary hearing.  When

19   examined in their true light, it is difficult to see many of the inconsistencies about which

20   petitioner complains or any reasonable basis for impeaching Ms. Michel's testimony.  Where an

21   inconsistency in Ms. Michel's testimony is present, valid strategic considerations justified trial

22   counsel's decision to avoid an attempt at impeachment.  There are no objective shortcomings to

23   trial counsel's use of the preliminary hearing testimony.

24           The court finds no merit to petitioner's claim of ineffective assistance stemming

25   from any statements made at or about the March 13, 1987 lineup.  Ms. Michel affirmatively

26   identified petitioner during the lineup and did not offer any inconsistent statements to those

1   present at the time of this identification about others who may have committed the crime.  This

2   confidence in her identification continued through the preliminary hearing.  Trial counsel's

3   failure to impeach Ms. Michel with any statements made at the lineup or during the preliminary

4   hearing was not in error.  Petitioner's first claim should be denied as the state court's ruling was

5   neither contrary to, nor an unreasonable application of Federal law.

6          B.  Trial Counsel's Failure to Litigate a Motion to Suppress an Identification

7                  Petitioner's second claim is that his trial counsel was ineffective when he failed to

8   fully litigate a motion to exclude Ms. Michel's identification of petitioner.  Petitioner argues that

9   his trial counsel unreasonably abandoned a motion to exclude Ms. Michel's identification of

10  petitioner as a result of being shown a single photo, ineffectively litigated a remaining motion

11  regarding the procedures used during the photographic lineup, and failed to renew the motion

12  when necessary.  As trial counsel's actions were objectively reasonable and did not deny him a

13  fair trial, denial of petitioner's second claim is recommended.

14                  The only reasoned rejection of this claim is the decision on petitioner's collateral

15  appeal by the Superior Court of California, County of San Joaquin.  The Superior Court rejected

16  this claim on the ground that:

17              Petitioner contends he received ineffective assistance of counsel
            because his attorney was not prepare to argue a pretrial motion to
18          exclude identification evidence and because his attorneys failed to
            adequately litigate the identification testimony.  The Court has
19          reviewed the transcript of the hearing on the motion to exclude
            identification evidence and finds that the delay in the motion was
20          due to the failure of the prosecution to produce the original photo
            line-up.  Petitioner's attorney demonstrated a high degree of
21          competence by preserving motion options until the original photo
            line-up would be available and could be examined.  There is no
22          indication that the motion to exclude identification evidence was
            compromised or that petitioner was deprived of a potentially
23          meritorious defense.  Further there is no evidence that petitioner's
            counsel failed in any other manner to adequately litigate
24          identification issues.

25  (People v. Saffold, Case No. SC 40118A, at 2-3.)

26  /////

The test for demonstrating ineffective assistance of counsel is set forth in Strickland, 466 U.S. at 668.  As detailed above, Ms. Michel was shown a lineup on March 13, 1987.  At that lineup, Ms. Michel examined two sets of photographs.  In the first set, Ms. Michel chose petitioner from the six photographs present.  In the second set, Ms. Michel chose a man who resembled petitioner, but stated that it was "not him."  At that time, investigators removed a single picture from the second set and showed it to Ms. Michel, asking her if she recognized the man in the photograph.  Ms. Michel replied that she did not and stated that the man pictured in the photograph was not in her restaurant on the morning of the murder.

Trial counsel filed a motion to exclude Ms. Michel's identification of petitioner. (CT 521-530.)  This motion sought to exclude Ms. Michel's identification of petitioner based upon multiple violations, including the unduly suggestive nature of the lineups shown to Ms. Michel as well as a violation of United States v. Simmons, 390 U.S. 377 (1968).  Petitioner argued that Ms. Michel expressed uncertainty when she identified petitioner and her selection was influenced by the actions and statements of investigators.  (CT 526-528.)

Petitioner asserts that law enforcement presented Ms. Michel with a single photograph of him on March 13, 1997.  (Pet'r's Mem.at 37, 40; Pet'r's Supp. at 16.)  Petitioner appears to base this claim on the facts presented in his original motion to suppress Ms. Michel's identification filed in the Superior Court prior to trial on June 5, 1989.  (Compare Pet'r's Supp. at 13 with Pet'r's Mem. at App. C.)  In both filings, petitioner claims that Ms. Michel was shown a single photograph of him.  (Id.)  However, as petitioner's counsel conceded at trial, and as documented by the evidence in the record, this assertion is not true.

There is no question that police investigators showed Ms. Michel a single photograph during their interview with her on March 13, 1987.  There is also no question that that photograph was not of petitioner.  Ms. Michel testified that police showed her a single photograph of Mr. Reece on March 13, 1987.  (RT 4964.)  Mr. Reece later identified himself as the person in the single photograph that police showed Ms. Michel.  (RT 5006.)  Sergeant Knief

1  stated that the photograph shown Ms. Michel on March 13, 1987, was a photograph of Mr.

2  Reece.  (RT 5869.)

3          During the preliminary hearing regarding the motion to exclude Ms. Michel's

4  identification of petitioner, trial counsel conceded that a single picture of petitioner had not been

5  shown to Ms. Michel.  (RT 159.)  Defense counsel accepted the prosecutor's representation that

6  the single photograph shown to Ms. Michel during police questioning was not a photograph of

7  petitioner.  (Id.)  As a result, trial counsel specifically stated that they were not proceeding with

8  the aspects of their motion that sought exclusion of an identification by Ms. Michel based upon

9  being shown a single photograph of petitioner.  (Id.)  Trial counsel acknowledged the facts as

10  they actually were when they stated in their opening argument, "[the police] picked [Rodney

11  Reece's] picture up and said, look, how about this guy, have you ever seen him before?"  (RT

12  4827.)

13          Given the utter lack of evidence to support petitioner's claim, it is difficult to

14  conceive how counsel may have been ineffective on this issue.  There was no objective evidence

15  at any point during the trial to support any motion to exclude Ms. Michel's identification of

16  petitioner based upon being shown a single photograph of him by law enforcement.

17  Consequently, there is no merit at this time to any claim that trial counsel was ineffective for

18  failing to bring or for continuing to argue such a motion.  See Shah, 878 F.2d at 1162.

19          After properly withdrawing the part of their motion based upon the single

20  photograph, trial counsel's remaining argument on the pending motion centered upon the

21  multiple photograph lineup that was shown on March 13, 1987, and whether it was unduly

22  suggestive.  (RT 159-185.)  Defense counsel continued by seeking exclusion of Ms. Michel's

23  pretrial identification because the lineup of multiple photos presented to her was "unduly

24  suggestive."  (RT 183.)  According to trial counsel, Ms. Michel was uncertain in her original

25  identification of petitioner and only reached her conclusions when prodded by investigators.  (CT

26  526-527.)  Due to the fact that the original photographic lineup was unavailable, and may have

19

1   been lost in the three years between its use and trial, the trial judge permitted defense counsel to

2   raise any motions that may have been warranted upon discovery of the original.  (RT 184.)

3           Petitioner's claim of ineffectiveness with regard to this issue is without merit.

4   Trial counsel had little legal basis upon which to argue that the lineup procedure was unduly

5   suggestive.  Due process requires identification free from impermissible suggestion by law

6   enforcement.  United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984).  The Constitution

7   prohibits only unnecessary or impermissibly suggestive pretrial identifications.  Neil, 409 U.S. at

8   196.  Nothing in the record suggests any substantial likelihood of misidentification.  Brathwaite,

9   432 U.S. at 114-116.  "An identification procedure is suggestive when it 'emphasize[s] the focus

10   upon a single individual' thereby increasing the likelihood of misidentification."  United States v.

11   Montgomery, 150 F.3d 983, 992 (9th Cir. 1998).

12           However, nothing in the record details any unduly suggestive actions by law

13   enforcement that may have tainted Ms. Michel identification of petitioner.  Ms. Michel gave no

14   testimony that would indicate that she felt pressured to make an identification.  Officer Wagner

15   described how he left Ms. Michel alone to examine the photographs, and that after "10, 20

16   seconds, possibly a little longer . . . [Ms. Michel] walked over to where [he] had sat down" and

17   identified petitioner.  (RT 5484-5485.)  As explained above, the failure to bring a meritless

18   motion is not ineffective assistance of counsel.

19           Furthermore, the evidence consistently demonstrates that Ms. Michel was

20   confident in her selection of petitioner from the photo lineups presented to her.  While Sgt. Mark

21   Lujan described Ms. Michel's identification of petitioner as tentative (CT 13), he also stated that

22   she identified no other possible suspects from the original lineup presented to her (CT 20).

23   Furthermore, Sgt. Lujan was confident enough in Ms. Wagner's selection of petitioner to arrest

24   him on an outstanding warrant.  (CT 13).  Officer Wagner considered the identification made

25   during the initial lineup on October 3, 1987, as "positive" (CT 153), and testified at trial that Ms.

26   Michel was "almost positive" with her identification of petitioner (RT 5487).  Sergeant Knief

1  stated that Ms. Michel identified petitioner on March 13, 1987, without any hesitation. (CT 145,

2  RT 6178).

3  There is a similar lack of merit to petitioner's claim that the lineup procedures

4  were unduly suggestive and should have precluded an in-court identification of petitioner by Ms.

5  Michel. (CT 530.)  In determining the validity of an in-court identification, the totality of the

6  circumstances must be examined.  Simmons v. United States, 390 U.S. 377, 384 (1968).  Several

7  factors, including the opportunity of the witness to view the criminal at the time of the crime, the

8  witness' degree of attention, the accuracy of the witness' prior description of the criminal, the

9  level of certainty demonstrated by the witness at the confrontation, and the length of time

10  between the crime and the confrontation should be considered in assessing the reliability of the

11  witness' identification and whether the confrontation leading to the identification was

12  impermissibly or unduly suggestive.  Neil v. Biggers, 409 U.S. 188, 196 (1972).  These factors

13  clearly demonstrate that Ms. Michel's identification of petitioner was valid and free of taint.

14  Ms. Michel identified petitioner as the man who shot and killed her husband.  (RT

15  4853, 4871, 4897, 4966.)  This identification was based on numerous factors, including Ms.

16  Michel's opportunity to view petitioner at the time of the murder.  Ms. Michel saw petitioner

17  when he entered the store (RT 4882), as he walked to the beer cooler (id.), when he was at the

18  counter (RT 4883, 4887), when he made his demand for money (id.), when he pointed the gun at

19  her husband (RT 4888), when he shot her husband (RT 4890), when he pointed a gun at Ms.

20  Michel (RT 4967), and when he ordered her to open the cash register, and when she gave him the

21  money that was in it (RT 4893).  See Gray v Klauser, 282 F.3d 633 (9th Cir. 2002), reversed and

22  remanded on other grounds, (upholding identification by witness that "had a good opportunity to

23  view [the defendant]," was paying a relatively high degree of attention, accurately described most

24  of the physical characteristic of the defendant, and was fairly sure at the photo lineup three days

25  after the incident.)  Upon evaluation of these factors, trial counsel's decision to not embark on a

26  quixotic attempt to litigate this meritless claim was not in error.

1	Furthermore, nothing in the record supports petitioner's claim that his counsel was
2	ineffective for failing to take the trial judge up on his offer to reintroduce his motion if the facts
3	warranted.  Petitioner claims his counsel was ill-prepared to argue the motion to exclude Ms.
4	Michel's identification.  This claim may very well be true had the circumstances been as
5	petitioner asserts.  However, the record shows changes in assumed facts and the available
6	evidence that affected trial counsel's ability to argue the entire motion as it was originally
7	presented.  (RT 159, 185.)  As noted by the Superior Court, petitioner's counsel effectively
8	preserved this motion should additional facts arise.  As demonstrated above, no such facts that
9	would support a valid motion to exclude Ms. Michel's identification presented themselves.

10	No other issues with the identification appear in the record.  Petitioner asserts in
11	his statement of facts that a Simmons[11] violation occurred and insinuates that trial counsel erred
12	by failing to more effectively challenge this aspect of the original motion.  (Pet'r's Supp. at 14.)
13	However, this too appears to be a restatement of the facts contained in petitioner's original
14	petition (see Pet'r's Mem. at App. C), as petitioner's argument is devoid of any discussion of the
15	merits of this claim.

16	This claim ignores the fact that the trial court specifically ruled that petitioner had
17	failed to meet his burden as it concerned the identification procedure used by law enforcement
18	prior to the March 13, 1987 lineup.  (RT 185.)  This ruling is not an unreasonable application of
19	established Supreme Court precedent.  Officer Wagner described advising Ms. Michel per
20	Simmons prior to the October 3, 1986 lineup.  (CT 152, RT 5484.)  Sergeant Knief testified that
21	he provided Ms. Michel with the Simmons admonishment prior to conducting the March 13,
22	1987 lineup.  (CT 144, RT 5869.)  Ms. Michel makes no mention of Simmons in her testimony.
23	/////

24

25	[11] Simmons v. United States, 390 U.S. 377, 384 (1968), governs suggestive lineups and
26	requires law enforcement to notify witnesses that the suspect, or his photograph, may or may not
	be in the lineup.

1    There was no impermissible or suggestive pre-trial identification and there were

2    adequate and independent grounds to ensure the reliability of Ms. Michel's identification of

3    petitioner as the man who shot and killed her husband and robbed their restaurant.  Petitioner did

4    not suffer the ineffective assistance of counsel which he claims entitles him to relief in this case.

5    The state court's rejection of petitioner second claim was neither contrary to, nor an unreasonable

6    application of Federal law.  Petitioner's second claim for relief should be denied.

7    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

8    application for a writ of habeas corpus be denied.

9    These findings and recommendations are submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within ten days after service of the objections.  The parties are advised

15   that failure to file objections within the specified time may waive the right to appeal the District

16   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17   DATED:  January 9, 2007.

19   UNITED STATES MAGISTRATE JUDGE

21   13

22   Saff1040.157

23