IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY EUGENE SAFFOLD,

    Petitioner,                      No. CIV S-98-1040 RRB JFM P

    vs.

JIM HAMLETT, Warden,           ORDER AND

    Respondent.                    FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding with counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his April 3, 1990, conviction on charges of first-degree murder, assault with a deadly weapon, two counts of robbery, and findings of firearms use associated with the murder and robberies, for which he is serving a sentence of thirty years to life in prison. Petitioner is proceeding on two claims of ineffective assistance of trial counsel.[1]

/////

/////

---

[1] Petitioner's original petition, filed in propria persona on June 4, 1998, contained five claims. In a supplemental memorandum of points and authorities filed by court-appointed counsel on August 9, 2004, petitioner abandoned claims three through five.

1

PROCEDURAL HISTORY

Petitioner filed his original petition on June 4, 1998. On June 23, 1998, this court issued findings and recommendations recommending dismissal of this action for failure to exhaust state court remedies. On July 10, 1998, petitioner filed objections to the findings and recommendations. On August 3, 1998, the court vacated the findings and recommendations and directed respondent to file a response to the petition within thirty days. On August 28, 1998, respondent moved to dismiss the petition as barred by the statute of limitations. Petitioner opposed the motion. On November 3, 1998, this court issued findings and recommendations recommending that the motion be granted. On January 6, 1999, those findings and recommendations were adopted by the district court over petitioner's objections. Judgment was entered on the same day.

Petitioner timely filed a notice of appeal from the January 6, 1999 judgment. Counsel was appointed to represent petitioner on appeal. By published decision dated July 17, 2000, the United States Court of Appeals for the Ninth Circuit reversed the judgment and remanded the matter for further proceedings. Saffold v. Newland, 250 F.3d 1262 (9th Cir. 2000). On June 17, 2002, the United States Supreme Court vacated the decision of the court of appeals and remanded the matter for a determination whether petitioner had "delayed 'unreasonably' in seeking California Supreme Court review." Carey v. Saffold, 536 U.S. 214, 225 (2002). On January 14, 2003, the United States Court of Appeals for the Ninth Circuit answered that question in the negative and remanded the matter to this court for disposition on the merits. Saffold v. Carey, 312 F.3d 1031 (9th Cir. 2002).

Following remand, petitioner, now represented by court-appointed counsel, filed a supplemental memorandum of points and authorities on August 9, 2004. Respondent's answer was filed on October 27, 2004, and petitioner filed his traverse on January 13, 2005.

On April 13, 2006, respondent filed a second motion to dismiss this action as time-barred. This court heard oral argument on the motion on September 14, 2006. On January

9, 2007, this court issued findings and recommendations recommending that the petition be denied on the merits. On March 30, 2007, petitioner filed objections to the findings and recommendations. By order filed April 9, 2007, the findings and recommendations were vacated and respondent was granted twenty days to respond to the contentions in petitioner's objections. On April 25, 2007, respondent timely filed a response. On May 10, 2007, petitioner filed a request to strike the response on the ground that it does not respond to the objections but repeats arguments set forth in the answer and the reply to respondent's April 13, 2006 motion to dismiss. Petitioner's request to strike the response will be denied.

Finally, by order filed September 13, 2007, this court deemed respondent's second motion to dismiss as supplemental to respondent's October 27, 2004 answer and all briefing filed in connection therewith as supplemental to the appropriate briefing filed in support of and opposition to the claims raised in the petition.

This action has been pending for almost ten years, more than half of which has been spent involved with the ever-evolving jurisprudence interpreting the provisions of the federal habeas corpus statute of limitations, enactment of which preceded the filing of this action by slightly less than two years. The issues raised by the latest iteration of the statute of limitations defense in this case involve, among other things, complex questions of state law, the doctrine of the law of the case, and the role of precedent. Under the circumstances, a substantial argument can be made in favor of the application of the doctrine of equitable tolling. Cf. Harris v. Carter, 515 F.3d 1051 (9th Cir. 2008) (habeas petitioner who relied on circuit precedent that was subsequently overruled by U.S. Supreme Court entitled to equitable tolling of the limitations period). Moreover, at this juncture petitioner's claims have been fully briefed on the merits. This court finds little benefit, if any, to either party or to interests of judicial economy from resolution of the complicated questions posed by the statute of limitations defense at this stage of this litigation. Accordingly, the court will assume without deciding that this action is not time-barred, and will make findings and recommendations on the merits of petitioner's claims.

3

FACTS[2]

Shortly after 7:00 a.m., on September 29, 1986, Saffold and Rodney Reece drove to the El Mexicano Restaurant. The owners, Augustin and Maria Michel, had arrived at 6:30 a.m. and opened at 7:00 a.m.

Saffold entered the restaurant, retrieved a beer from a cooler, then approached the cash register. When Saffold arrived at the cash register, Mr. Michel was already there. Saffold aimed a gun at Mr. Michel and said, in English, "Give me the money, give me the money." Mr. Michel raised his arms and said, in Spanish, "Which money? What money?" Saffold fired the gun, hitting Mr. Michel on the right side of the neck. He fired a second shot which was later recovered in the kitchen.

Mrs. Michel, who from the kitchen area saw the two at the cash register and saw Saffold shoot Mr. Michel, moved back to the sink in the kitchen. Mr. Michel entered the kitchen and "threw himself on the floor." He said to Mrs. Michel, "Get down, they're going to kill you." She squatted down, but Saffold said to her, "Give me the money, give me the money." At gunpoint, she went to the cash register and put it in a bag. Saffold took the food stamps from the register and put them in the bag. He then ran out of the restaurant. Mr. Michel died from the gunshot wound.

Saffold testified in his own defense claiming he went to the El Mexicano Restaurant on the morning of September 29, 1986, and bought a beer and two burritos, but did not commit the crimes.

(People v. Saffold, slip op. at 2-3).

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

---

[2] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Saffold, No.# C009223 (January 27, 1992) (hereinafter Opinion), a copy of which is attached as Exhibit D to Respondent's Answer to Petitioner's Application for Writ of Habeas Corpus, filed August 9, 2004.

4

        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

/////

/////

5

II. <u>Petitioner's Claims</u>

Petitioner raises two related claims of ineffective assistance of counsel, both of which arise from testimony by the victim's wife, Maria Michel. She witnessed the murder and testified at trial that petitioner was the man who shot her husband. Petitioner claims that trial counsel was ineffective in failing effectively impeach Mrs. Michel with prior inconsistent statements about the identity of the murderer, and that counsel failed to adequately litigate a motion to suppress Mrs. Michel's identification testimony.

Both of these claims were exhausted in petitions for writ of habeas corpus filed at each level of the state court system. <u>See</u> Exs. E, F, and G to Motion to Dismiss, filed August 28, 1998. There was no reasoned rejection of the first claim. The last reasoned rejection of the second claim is the June 9, 1997 decision of the San Joaquin County Superior Court. Appendix F and G to Petition, filed June 4, 1998. The state superior court rejected the claim as follows:

> Petitioner contends he received ineffective assistance of counsel because his attorney was not prepared to argue a pretrial motion to exclude identification evidence and because his attorneys failed to adequately litigate the identification testimony. The courts has reviewed the transcript of the motion to exclude identification evidence and finds that the delay in the motion was due to the failure of the prosecution to produce the original photo line-up. Petitioner's attorney demonstrated a high degree of competence by preserving motion options until the original photo line-up would be available and could be examined. There is no indication that the motion to exclude identification evidence was compromised or that petitioner was deprived of a potentially meritorious defense. Further there is no evidence that petitioner's counsel failed in any other manner to adequately litigate identification issues.

<u>In the Matter of the Petition of Tony Eugene Saffold For Writ of Habeas Corpus</u>, Case No. SSC 40118A, Order filed June 9, 1997, at 2-3.[3]

Petitioner must show two things to demonstrate constitutionally ineffective assistance of counsel. First petitioner must show that, considering all the circumstances,

---

[3] A copy of this order is attached as Appendices F and G to the original petition filed in this action on June 4, 1998.

1  counsel's performance fell below an objective standard of reasonableness.  Strickland v.
2  Washington, 466 U.S. 688 (1984).  The court must determine whether in light of all the
3  circumstances, the identified acts or omissions were outside the wide range of professional
4  competent assistance.  Id. at 690.  "Review of counsel's performance is highly deferential and
5  there is a strong presumption that counsel's conduct fell within the wide range of reasonable
6  representation."  United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986).

       Second, petitioner must prove prejudice.  Strickland at 693.  To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

       The following facts are relevant to petitioner's claims.  Mrs. Michel was present in the restaurant on the morning of September 29, 1986, and witnessed the shooting of her husband.  Mrs. Michel testified at the preliminary hearing, held on May 18, 1987 in relevant part as follows.[4]  On the day of the shooting, Mrs. Michel told police officers that the shooter was a tall black man wearing a yellow T-shirt and that "[h]e had curly hair like they all have it."  CT at
/////

---

[4] These questions and answers took place through an interpreter.  Clerk's Transcript on Appeal (CT) at 65.

60-61. She testified that petitioner had been a customer on two or three occasions prior to the shooting, and that she was "positive" he was the shooter. Id. at 34-35.

"[A]round the 2nd of October" Mrs. Michel was shown two sets of photographs by a police officer, Officer Wagner. Id. at 54. She looked through the first set of photographs, offered as Defendant's Exhibit A at the preliminary hearing, and identified petitioner as the shooter. Id. at 55-58. Mrs. Michel told the officer she was "100 percent sure that this was the man." Id. at 56. Thereafter, the following exchange took place between Mrs. Michel, petitioner's counsel, and the court:

> Q. Now, showing you Defendant's B, I would ask that you show me in this lineup the person that you told Officer Wagner was the person that had shot your husband. Can you point to the picture you picked out the second time?
>
> THE COURT: Picture on the left side.
>
> MS. FERGUSON: Left side, the second.
>
> THE COURT: It's the middle photograph on the left side. Second down from the top.

Id. at 58.

On redirect examination, the following exchange took place between Mrs. Michel and the prosecutor:

> Q: Okay. Now, in response to Mrs. Ferguson's questions you've described what you did when you saw the photo lineups. Do you recall that?
>
> A: The first one yes, the second one I'm not sure.
>
> Q: All right. Let me show you this first photo lineup which was marked here as Defendant's A.
>
> Now, is this defendant's picture in this photo lineup? Could you point that out for us.
>
> You're pointing to the top right-hand photo, is that correct?
>
> Is that yes?
>
> A. Yes.

8

1  Q. And that's this defendant's photograph, is that correct?

2  A. Yes.

3  Q. I have pulled out the top right-hand photo which is identified in the back as Tony Eugene Saffold.

4

5  Now, you were also shown a second photographic lineup which has been identified here as Defendant's Exhibit B. Are you saying that this defendant's photograph is someplace in these?

6  A. I'm not sure about these.

7

8  Q. Okay. Do you recall Sergeant Knief and myself coming out to see you at your house?

9  A. Yes.

10  Q. Okay. And we -- do you recall us showing you specifically a photograph of a different man?

11  A. Yes.

12

13  Q. One photograph in particular, do you remember that?

14  A. Yes.

15  Q. And at that time, do you recall what we asked you about that person?

16  A. If that was the person.

17  Q. And was that the man or was that not the man?

18  A. Yes, it was.

19  Q. The single photograph, that Sergeant Knief and I showed you, remember we came to your house and showed you a single photograph?

20

21  A. I don't remember.

22  Id. at 65-66. During re-cross examination, the following exchange took place between Mrs.

23  Michel and defense counsel:

24  Q. I believe you just testified you don't remember Sergeant Knief here and Mr. Van Oss showing you just a single picture, is that right?

25

26  A. That they showed me a picture?

1  Q. Yes.

2  A. They showed me some photographs, yes.

3  Q. All right, Do you recall what they said to you before they showed you the photographs?

4  A. If I could recognize them.

5

6  Q. Now, we talked about the first occasion you looked at photographs and a second occasion you looked at photographs.

7  Was the second occasion the time that Sergeant Knief and Mr. Van Oss came out and talked to you or was there another you were shown photographs?

8

9  A. They took some more photographs.

10  Q. Okay. Let me make it clear. You were shown some photographs by Officer Wagner, the Spanish speaking officer, is that right?

11

12  A. Yes.

13  Q. Okay. And these are the photographs that you have told us are in this folder marked A, is that right?

14

15  A. Yes.

16  Q. These are the ones that Officer Wagner showed you?

17  A. Yes.

18  Q. And at some other point in time you were shown these photographs in folder B, is that right?

19  A. They showed them to me.

20  Q. Was it Officer Wagner that showed you the second set of photographs also?

21

22  A. Yes.

23  Q. Then when Mr. Van Oss and Mr. Knief went out, when Sergeant Knief came out and showed you photographs, that was the third time you looked at photographs, is that right?

24

25  A. Today is the third time.

26  Q. Okay. Was Officer Wagner with Mr. Van Oss and Sergeant Knief when they went out to show you the photographs?

10

1   A. Yes.

2   Q. Okay. So, when you saw these photographs that are in folder B, that was the time that Mr. Van Oss and Sergeant Knief and
3   Officer Wagner went out, is that right?

4   A. Yes.

5   Q. Now, when I was talking to you, you've picked this photograph?
6   A. No, I'm not sure about these. It's the other ones.

7   . . .

8   Q. . . . When you were shown the second set of photographs, the ones that were in B, were you able to pick out anyone as being the
9   person who had shot your husband?

10  A. . . . No.

11  Q. Okay. When you told me earlier that the person was number 3 or photograph number 3 –
12  
    A. It was the other one.
13  
    Q. Can I finish the question, please?
14  
        When you told me a little while ago that the person who shot
15  your husband was number 3, in this group, was that a mistake?

16  A. Yes.

17  Q. All right.

18  A. It was an error.

19  Q. During the time that we took the recess, did you talk to anyone about the photographs that you have been shown?
20  
    A. No.
21  
                MR. VAN OSS: I'm going to object. I'm not sure
22  but it seems to me that assuming a fact not in evidence or
    misquoting the witness. My recollection is that Mrs. Ferguson first
23  asked the witness if there was anybody that looked like that.

24              THE COURT: I'll overrule the objection.

25      I think you're going back on the past question. Laches, too
    late.
26

11

> As I recall it was pretty clear to me, the witness indicated she was identifying the perpetrator.

Id. at 67-69.

At the preliminary hearing, Officer Wagner testified that on or about October 3, 1986, he showed Mrs. Michel a photographic lineup given to him by Sergeant Lujan. Id. at 151-52. Officer Wagner testified that Mrs. Michel viewed the photographic lineup "for a very short period of time" and then pointed to a photograph of petitioner. Id. at 152. Officer Wagner testified that Mrs. Michel told him that "this was the face but this photograph she didn't remember the chin hair, or the hair being as long" and that "except for the hair and the whiskers it was the person." Id. at 152-53. Officer Wagner described her identification as a "positive" identification; Sergean Lujan described it as a "tentative" identification. Id. at 152-53 (Officer Wagner), 13 (Sergeant Lujan).

At the preliminary hearing, Sergeant Knief testified that on March 13, 1987 he showed Mrs. Michel the photographic lineup shown to her on October 3, 1986. Id. at 144. Mrs. Michel selected petitioner's photograph, and that she did not hesitate in doing so. Id. at 145. Mrs. Michel told him that petitioner's appearance was different in the photograph than on September 29, 1986 because "there was no beard . . . the afro was shorter and that the mustache was not as big and no beard." Id. at 146.

On the same day, Sergeant Knief showed Mrs. Michel a second photographic lineup. Id. This lineup contained a photograph of Rodney Reece. Id. He testified that she did not make any tentative identification out of that lineup. Id. Sergeant Knief testified that Mrs. Michel indicated that the individual in photograph number 4 "had a slight resemblance to the person [who shot her husband] but it was not him." Id. at 146-47. The person in photograph number 4 was named Steven Claude Rockingham. Id. at 147. Photograph number 3 was of a person named Thomas Rideau. Id. During this examination of the second set of photographs, investigators specifically pointed to Mr. Reece's photograph and asked Mrs. Michel if she

1 recognized him.  Reporter's Transcript of Proceedings (RT) at 5869.  At trial, Sergeant Fleming
2 testified that Mrs. Michel replied with certainty that she did not.  Id.

    A.  Failure to Impeach Mrs. Michel

Petitioner contends that counsel was ineffective in failing to impeach Mrs. Michel with several statements from her preliminary hearing testimony, including her testimony that she had selected a photograph from the second lineup and identified the individual in that photograph, who was not petitioner, testimony she later disavowed as error.  Petitioner also contends that Mrs. Michel "made a number of statements at the preliminary hearing that seriously undermined the credibility of her identification, none of which were used by defense counsel at the trial to impeach her."  Supplemental Memorandum of Points and Authorities in Support of the Application for Writ of Habeas Corpus, filed August 9, 2004, at 27.  These include her testimony that she had initially selected a photograph of Thomas Rideau from the second lineup, which she later described as error and said instead that she could not identify anyone in the second lineup; her testimony that she was "not sure" about the photographs in the second lineup, Defendant's Exhibit B; and the apparent conflict between her testimony that she remembered the prosecutor and Sergeant Knief showing her a single photograph and her subsequent statements that she did not remember that and that she remembered being shown "photographs."  Id. at 27-28; see also Objections to the Magistrate Judge's Findings and Recommendations, filed March 30, 2007, at 5-6.

As a general rule, "matters such as counsel's approach to impeachment are often viewed as tactical decisions, and such decisions do not constitute deficient conduct simply because there are better options. . . ."  Reynoso v. Giurbino, 462 F.3d 1099, 1113 (9th Cir. 2006).  "[M]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation."  Gustave v. United States, 627 F.2d 901, 904 (9th Cir. 1980).  In order to show that counsel's approach to impeachment constituted deficient conduct petitioner must show that the decision not to impeach Mrs. Michel was "a poor tactical decision" and he

1  must "'overcome the presumption that, under the circumstances, the challenged action [or lack of
2  action] "might be considered sound trial strategy."'" Reynoso, at 1113 (quoting Strickland, 466
3  U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. State of La., 350 U.S. 91, 101 (1955)).
4  　　　　After careful review of the record, this court finds that no evidence that counsel's
5  decision not to impeach Mrs. Michel with the alleged inconsistencies in her preliminary hearing
6  testimony concerning her identification of petitioner as the perpetrator was "a poor tactical
7  decision." The alleged inconsistencies in Mrs. Michel's preliminary hearing testimony do not
8  raise serious questions about the reliability of her identification of petitioner as the man who shot
9  her husband, or the credibility of her trial testimony identifying petitioner as the shooter. Mrs.
10 Michel testified at the preliminary hearing that petitioner had been a customer two or three times
11 prior to the shooting. On two separate occasions, approximately five months apart, Mrs. Michel
12 selected petitioner's photograph from the same photographic lineup. When shown a second
13 lineup, Mrs. Michel told investigators that one person "bore a resemblance" to the shooter but
14 was not the shooter. Petitioner's arguments notwithstanding, the confusion in Mrs. Michel's
15 preliminary hearing testimony over whether there was a photograph of the person who shot her
16 husband in the second photographic lineup did not raise serious questions about the reliability of
17 her identification of petitioner as the shooter. Petitioner has not overcome the presumption that
18 counsel's decision not to impeach Mrs. Michel with the statements cited by petitioner constituted
19 sound trial strategy.
20 　　　　Moreover, petitioner has made no showing that the failure to impeach Mrs.
21 Michel was prejudicial. The evidence of petitioner's guilt was substantial. In addition to all the
22 other evidence of guilt in the record, petitioner's own testimony about the timing of his arrival at
23 the restaurant and his purchase of a beer were congruent with Mrs. Michel's description of the
24 timing of the shooter's arrival in the restaurant and his activities upon arrival. Petitioner's own
25 testimony placed him in the restaurant shortly after it opened, buying a beer and two burritos.
26 RT at 6341. Mrs. Michel testified that petitioner was the second customer of the day. RT at

1  4871. She testified that the first customer of the day bought two burritos and nothing to drink.

2  RT at 4869. She testified that petitioner went to get a beer after entering the restaurant and then

3  approached the cash register, demanded money, and shot her husband. RT at 4882-4890. After

4  careful review of the record herein, this court finds no reasonable probability that the outcome of

5  petitioner's trial would have been different had counsel attempted to impeach Mrs. Michel with

6  the alleged inconsistencies cited by petitioner.

7  The state court's rejection of this claim was neither contrary to, nor an

8  unreasonable application of relevant principles of federal law. This claim should be denied.

9  B. <u>Failure to Adequately Litigate Suppression of Mrs. Michel's Identification of</u>

10  <u>Petitioner</u>

11  Petitioner's second claim is that his trial counsel provided ineffective assistance

12  in failing to adequately litigate a pretrial motion to suppress Mrs. Michel's pretrial identification

13  of petitioner. As noted above, the only reasoned rejection of this claim is the decision of the San

14  Joaquin County Superior Court on petitioner's state habeas corpus petition. The Superior Court

15  rejected this claim on the ground that:

> Petitioner contends he received ineffective assistance of counsel because his attorney was not prepare to argue a pretrial motion to exclude identification evidence and because his attorneys failed to adequately litigate the identification testimony. The Court has reviewed the transcript of the hearing on the motion to exclude identification evidence and finds that the delay in the motion was due to the failure of the prosecution to produce the original photo line-up. Petitioner's attorney demonstrated a high degree of competence by preserving motion options until the original photo line-up would be available and could be examined. There is no indication that the motion to exclude identification evidence was compromised or that petitioner was deprived of a potentially meritorious defense. Further there is no evidence that petitioner's counsel failed in any other manner to adequately litigate identification issues.

24  People v. Saffold, Case No. SC 40118A, at 2-3.

25  Prior to trial, one of petitioner's attorneys, Michael Platt, filed a motion to

26  exclude Ms. Michel's identification of petitioner. CT 521-530. This motion sought to exclude

1  Ms. Michel's identification of petitioner based upon multiple violations, including the unduly
2  suggestive nature of the lineups shown to Ms. Michel as well as a violation of <u>United States v.</u>
3  <u>Simmons</u>, 390 U.S. 377 (1968).  On July 31, 1989, the attorney who represented petitioner at
4  trial, Ralph Cingcon,  requested permission to withdraw the motion as presented.  RT at 159-
5  160.  Mr. Cingcon accepted the prosecutor's representation that Mrs. Michel had not been shown
6  a single photograph of petitioner.  <u>Id</u>. at 159.  He also, however, requested leave to present the
7  motion at a subsequent time after he had reviewed the original photographic lineups.  <u>Id</u>.  The
8  court denied counsel's request and proceeded to hear the motion.  <u>Id</u>. at 160-185.  The only
9  photographs available at the hearing were Xerox copies of the original lineup.  <u>See</u>  <u>id</u>.  At the
10 end of the hearing on the motion, the court found that the photo identification procedure was
11 "proper" and there was "insufficient evidence" to warrant a finding that it was not proper.  <u>Id</u>. at
12 185.  The court reserved to petitioner's counsel the right to bring a new motion if appropriate.  <u>Id</u>.
13 at 184.  Counsel did not bring a further motion.

14         In support of his second claim, petitioner contends that counsel was ineffective in
15 failing to fully litigate the motion to exclude Mrs. Michel's identification of petitioner because
16 the pretrial identification procedures used in this case were unnecessarily suggestive and
17 "conducive to mistaken identification." Supplemental Memorandum, at 32.  To support this
18 contention, petitioner points to (1) the "cross-racial" nature of Mrs. Michel's identification of
19 petitioner; (2) the fact that Mrs. Michel selected two different photographs out of the second
20 lineup, one prior to the preliminary hearing and one at the preliminary hearing; and (3) Mrs.
21 Michel's alleged "limited opportunity to view the suspect at the time of the crime."  <u>Id</u>.

22         "[C]onvictions based on eyewitnesses identification at trial following a pretrial
23 identification by photograph will be set aside only if the photographic procedure was so
24 impermissibly suggestive as to give rise to a very substantial likelihood of irreparable
25 misidentification." <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968).  "An identification
26 procedure is suggestive when it 'emphasize[s] the focus upon a single individual' thereby

increasing the likelihood of misidentification." United States v. Montgomery, 150 F.3d 983, 992 (9th Cir. 1998).

There is nothing in the record that suggests that the pretrial identification procedures used in the underlying proceedings were unduly suggestive, or that those procedures created a "substantial likelihood" that Mrs. Michel misidentified petitioner as the man who shot her husband. Mrs. Michel was present in the restaurant on the morning of September 29, 1986, and witnessed the shooting of her husband. On the day of the shooting, Mrs. Michel described the shooter to police officers. She testified at the preliminary hearing that petitioner had been a customer on two or three occasions prior to the shooting, and that she was "positive" petitioner was the shooter. CT at 34-35. She testified at trial that she saw petitioner when he entered the store, as he walked to the beer cooler, when he was at the counter, when he made his demand for money, when he pointed the gun at her husband, when he shot her husband, when he pointed a gun at her, when he ordered her to open the cash register, and when she gave him the money that was in the register. RT 4881-4893. There is nothing in the record that suggests Mrs. Michel did not have sufficient opportunity to see the perpetrator, nor is there evidence in the record that suggests that law enforcement officers conducted the photographic lineups in an improperly suggestive manner.

As noted above, the state court found that

> Petitioner's attorney demonstrated a high degree of competence by preserving motion options until the original photo line-up would be available and could be examined. There is no indication that the motion to exclude identification evidence was compromised or that petitioner was deprived of a potentially meritorious defense. Further there is no evidence that petitioner's counsel failed in any other manner to adequately litigate identification issues.

People v. Saffold, Case No. SC 40118A, at 2-3. These findings are fully supported by the record. Petitioner's counsel acted well within the bounds of reasonable professional assistance in connection with the motion to exclude Mrs. Michel's identification of petitioner. Petitioner has not shown a reasonable likelihood that the motion that was brought would have been granted

had counsel performed differently, nor has he shown a reasonable likelihood that a further motion to exclude the identification evidence would have been granted.

For the foregoing reasons, petitioner's second claim for relief should be denied.

In accordance with the above, IT IS HEREBY ORDERED that petitioner's May 10, 2007 request to strike respondent's April 25, 2007 response is denied; and

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied on the merits.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 22, 2008.

UNITED STATES MAGISTRATE JUDGE

12
saff1040.157